UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES GAMBLE,

                Plaintiff,                Case No. 11-14987

v.                                          Hon. Gerald E. Rosen

VAN BUREN OFFICER SCOTT GRIGGS and
VAN BUREN OFFICER PATRICK WEHRMAN,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 28, 2013    

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff James Gamble commenced this action in Wayne County Circuit Court on October 11, 2011, asserting against the two Defendant police officers, Officer Scott Griggs and Officer Patrick Wehrman (collectively, "Officers"), a federal constitutional claim of excessive force actionable under 42 U.S.C. § 1983 and state-law claims of assault and battery, intentional infliction of emotional distress ("IIED"), false arrest, false imprisonment, and malicious prosecution. Defendants removed the action to this Court on November 11, 2011, citing Plaintiff's assertion of claims arising under federal law.

1

By motion filed on July 2, 2012, Defendants now seek summary judgment in their favor on each of Plaintiff's claims, alleging that Plaintiff has failed as a matter of law to demonstrate any deprivation of his civil rights. In support of this motion, Defendants argue that they had probable cause to arrest Plaintiff, employed a reasonable amount of force in light of the circumstances presented, and are entitled to qualified and governmental immunity with respect to Plaintiff's constitutional and state-law claims, respectively.

In response, Plaintiff argues that genuine issues of material fact remain as to the reasonableness of Defendants' conduct, and that audio/video recordings of the events surrounding his arrest do not eliminate these factual disputes. Plaintiff also asserts that Defendants lacked probable cause to conduct his arrest; that he only received tickets citing him for ordinance violations after he had already filed a citizen's complaint against Defendants; and that his state-law claims are otherwise viable under Michigan law. Defendants' subsequent reply and Plaintiff's supplement to his response concentrate primarily on the impact of the aforementioned audio/video recordings on the outcome of this motion.

Having reviewed Defendants' motion and accompanying exhibits, Plaintiff's response, and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

This case arises primarily out of an incident that occurred on October 19, 2009 at Plaintiff's residence in Belleville, Michigan. After spending the day working in his garden,

Plaintiff went inside his house and poured himself an alcoholic drink. [Plaintiff's Dep., pp. 49-51]. He then headed to his garage, which is attached to the house, and turned on the stereo sometime between 10:30 p.m. and 11 p.m. [*Id.* at p. 51]. For approximately 30 minutes, Plaintiff sat on his wicker couch listening to music and enjoying the evening. [*Id.* at pp. 50, 52].

At approximately 11:25 p.m., the Officers were dispatched to Plaintiff's residence as a result of a neighbor's noise complaint. [Defendants' Ex. 1, Call for Service]. Upon arriving at Plaintiff's residence in separate police cars, the Officers heard loud music coming from Plaintiff's partially open garage. [Griggs Dep., pp. 10-11; Werhman Dep., p. 11; Plaintiff's Dep., p. 54]. Plaintiff's wife, Rhonda Gamble, was sitting on the porch outside smoking a cigarette when the Officers arrived. [Plaintiff's Dep., p. 53; Rhonda Gamble Dep., p. 16].

The Officers parked their respective cars and walked toward the house, encountering Plaintiff and his wife in front of the garage. [Griggs Dep., p. 11]. Officer Wehrman told Plaintiff about the noise complaint, reminded him of the existence of local ordinances, and asked him to "turn the music down." [Wehrman Dep., p. 12]. Plaintiff refused. [Wehrman Dep., pp. 12-13; Plaintiff's Dep., pp. 53, 55]. Officer Griggs then asked Mrs. Gamble to turn down the radio, and she complied. [Griggs' Dep, p. 12; Rhonda Gamble Dep., pp. 22, 27]. Plaintiff and Defendants nevertheless continued their argument outside the garage, where Plaintiff informed Officer Griggs that he would turn the music back up once the Officers left. [Griggs Dep., p. 13; Plaintiff's Dep., pp. 60-61; Rhonda Gamble Dep., p. 22].

The situation quickly escalated. Plaintiff alleges that the Officers became hostile and accused him of being "out of control," to which Plaintiff retorted, "No, I think you're out of control." [Plaintiff's Dep., p. 61]. Plaintiff then told the Officers "this is over" and attempted to walk back into his house, but Officer Griggs ordered him to stop and produce identification.

3

[Plaintiff's Dep. at pp. 62-64; Griggs Dep., p.14]. Plaintiff stopped, informed Officer Griggs that his ID was inside the house, and then continued toward the house, purportedly to retrieve the ID. [Plaintiff's Dep., p. 64].

Officer Griggs again ordered Plaintiff to stop, at which point one of the Officers grabbed Plaintiff by the arm.[1] [Plaintiff's Dep., pp. 64, 66-67; Griggs Dep., p. 14]. Officer Griggs then asked Mrs. Gamble to retrieve Plaintiff's ID from the house. [Griggs Dep., p. 15]. While Mrs. Gamble was inside the house, Plaintiff allegedly tried to pull himself away from the officer's grasp. *Id.* Officer Griggs claims he then "pulled [Plaintiff] back and grabbed him by his collar," and "asked him to relax." [*Id.*]. Plaintiff asked the Officers, "What are you going to do, tase me?" [Plaintiff's Dep., p. 68]. Plaintiff alleges Griggs then called him "fucking asshole," to which Plaintiff replied, "You're a Bozo." [*Id.* at p. 69].

According to Plaintiff's testimony, Officer Griggs then punched him in the forehead, above his right eyebrow. [*Id.* at pp. 69-71]. When Mrs. Gamble walked back outside, she saw her husband laying silent on the ground and the Officers cursing at him. [Rhonda Gamble Dep., pp. 31-32]. According to Mrs. Gamble's written statement, the Officers yelled at Plaintiff, "You should have turned the radio off dumbass, stay down [son of a bitch]," and "I don't know why [you're] being such a fucking moron." [Rhonda Gamble's Statement]. Mrs. Gamble also claims at least one of the Officers called her husband "nigger" as they lifted him up from the ground. [*Id.*; Rhonda Gamble Dep., pp. 33-34]. Plaintiff denies swearing at the Officers at any point. [Plaintiff's Dep., p. 66]. Plaintiff also indicates that he became disoriented as a result of the

---

[1] Officer Griggs claims he was the officer holding Plaintiff, but Plaintiff's deposition testimony indicates it was Officer Wehrman who grabbed him. [Griggs Dep., p. 15; Plaintiff's Dep., pp. 65, 68].

blow, and does not remember anything up until he woke up in Officer Wehrman's car minutes later. [*Id.* at pp. 71-73].

Defendants describe a different version of the altercation. Officer Griggs claims that he let go of Plaintiff once Mrs. Gamble went into the house to retrieve Plaintiff's ID. [Griggs Dep., p. 16]. Officer Griggs next alleges that Plaintiff gave him a two-hand shove and pushed him back, calling him a "little man" and threatening to "beat [his] ass." [*Id.*; Wehrman Dep., p. 13]. At that point, Officer Griggs decided to arrest Plaintiff for assaulting him, and took Plaintiff to the ground by himself using a "straight arm bar takedown" technique. [Griggs Dep., pp. 16-17]. The two "landed on some stuff," and Officer Wehrman helped Officer Griggs handcuff the Plaintiff. [Griggs Dep., pp. 16-17; Wehrman Dep., p. 13]. Officer Griggs' police report acknowledges that Plaintiff "bumped his head on yard equipment" as he was taken down. [Plaintiff's Ex. G, Police Report, p. 2]. Officer Wehrman subsequently noticed that Plaintiff had a contusion in the middle of his forehead as a result of being taken down by Officer Griggs. [Wehrman Dep, pp. 16-17]. Once Plaintiff was back up on his feet, Office Wehrman escorted him to his police car. [Wehrman Dep., p. 15]. At this point, Mrs. Gamble approached Officer Griggs, apologized for Plaintiff's actions, and said that "he gets like that." [Rhonda Gamble Dep., pp. 37-39; Griggs Dep., p. 19]. Whereas Mrs. Gamble contends that she was alluding to her husband's diabetes and high blood pressure, Officer Griggs contends Mrs. Gamble was apologizing for Plaintiff's drunken behavior. [Rhonda Gamble Dep., pp. 37-39; Griggs Dep., p. 19].

Officer Wehrman drove Plaintiff to the Van Buren Township police precinct for booking, while Officer Griggs prepared his police report. [Wehrman Dep., pp. 15, 17-18; Griggs Dep., pp. 18-19, 21]. Officer Griggs claims he had no further interactions with Plaintiff that night after the

5

altercation outside of Plaintiff's house. [Griggs Dep., pp. 21-22]. In contrast, Plaintiff claims that after arriving at the precinct, Officer Griggs grabbed and pushed him, telling Plaintiff to "sober up" and "walk straight." [Plaintiff's Dep., p. 78].

While incarcerated in a holding cell within the police station, Plaintiff complained he was losing his vision on his right eye. [Plaintiff's Dep., pp. 79-81]. In light of Plaintiff's health complaints, he was transported by ambulance to the Oakwood Annapolis Hospital for treatment approximately two hours after arriving at the station. [*Id.* at p. 81; Wehrman Dep., pp. 19-20]. Mrs. Gamble called the police station and spoke with Sergeant Charles Bazzy, who informed her that Plaintiff was at the hospital. [Rhonda Gamble Dep., pp. 40-41]. Plaintiff had been unable to contact Mrs. Gamble because he allegedly could not remember his own phone number while in jail. [Plaintiff's Dep., pp. 80-81]. He was discharged from the hospital later that night and returned home with his wife. [*Id.* at p. 83].

After hearing Mrs. Gamble's recollections of the earlier altercation, Plaintiff and his wife decided to file a citizen's complaint regarding the incident, which they did a few days later. [*Id.*; Plaintiff's Ex. D, Citizen Complaint Investigation, p. 1; Plaintiff's Ex. H, Rhonda Gamble's Statement]. The record indicates that Officer Griggs received a two-day suspension without pay for his handling of Plaintiff's arrest, along with a recommendation for "anger management screening and evaluation." [Bazzy Dep, pp. 22-24].

Plaintiff alleges that he only received charges pursuant to the altercation by mail several days after filing the citizen's complaint. [Plaintiff's Dep., p. 92]. Conversely, Defendants contend that Plaintiff was charged at the night of the incident, before he left the police station, and that the citations he received by mail days later were merely amended versions of the same charges. [Griggs Dep., p. 22; Wehrman Dep., pp. 21-22]. Whatever the case, Officer Griggs cited

6

Plaintiff for assault and battery of a police officer, breach of peace, and interfering with police. [Police Report, p. 2]. The record is somewhat obscure as to the state court proceedings, but it appears that Plaintiff was acquitted on all charges. [Bazzy Dep., p. 25]. This lawsuit followed.

### III.    DISCUSSION

#### A.    THE STANDARDS GOVERNING DEFENDANTS' MOTION

Through the present motion, Defendants seek an award of summary judgment in their favor on Plaintiff's federal and state-law claims. Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

7

The Court will apply the foregoing standards in deciding Defendants' Motion for Summary Judgment in this case.

### B.   PLAINTIFF'S FEDERAL EXCESSIVE FORCE CLAIM

The Court first addresses Plaintiff's sole federal claim, pursuant to 42 U.S.C. § 1983, that Defendants violated his constitutional right to be free from excessive force.[2] For the reasons set forth below, the Court finds that Defendants are not entitled to summary judgment in their favor as to Plaintiff's excessive force claim.

### 1.   A Genuine Issue of Material Fact Remains as to Whether the Degree of Force Defendants Used Against Plaintiff Was Objectively Reasonable.

Defendants' principal argument is that the amount of force they employed to detain Plaintiff was reasonable under the circumstances.[3] The Fourth Amendment governs claims, such as the one Plaintiff asserts here, that a police officer has used excessive force in an encounter with a citizen. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002); *see also Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001) (holding that the right to be free from excessive force is a clearly established Fourth Amendment right). In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court provided guidance as to how the Fourth Amendment "reasonableness" standard should be applied in cases involving allegations of excessive force. To assess a claim of excessive force under the Fourth Amendment, a court must inquire "whether the officers' actions

---

[2] Any other federal Fourth Amendment claim arguably asserted in Plaintiff's complaint – e.g., a claim of arrest without probable cause – has been abandoned, in light of Plaintiff's failure to address any such claim in his response to Defendants' motion, and also in light of the existence of probable cause, as discussed later in this opinion in the context of Plaintiff's state-law claims.

[3] Although this "reasonableness" argument will be addressed in the context of Plaintiff's federal constitutional claim, the same inquiry is relevant to Plaintiff's state-law claim of assault and battery. In particular, an officer is not liable for assault and battery if he "use[s] that force reasonable under the circumstances" to achieve a legitimate law enforcement purpose. *Delude v. Raasakka*, 391 Mich. 296, 215 N.W.2d 685, 689 (1974).

[were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012). The Court emphasized that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Based on Plaintiff's factual account – which the Court must accept as true at the summary judgment stage – the considerations cited by the Supreme Court in *Graham* tend to create a triable issue of fact over whether the Officers used excessive force. Regarding the first factor, "the severity of the crime at issue," the record indicates that the Officers appeared at Plaintiff's house to address a mere noise complaint.[4] However, Plaintiff refused the Officers' initial request that he turn off the radio, and then announced he would turn the volume back up once the Officers left. These acts of defiance could have elevated Plaintiff's potential violation

---

[4] The Van Buren Township ordinance prohibiting disturbance of the public peace provides that:

> Any person who shall make or assist in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace or good order of the Township are disturbed, shall be guilty of a breach of peace and disorderly conduct.

VAN BUREN, MICH., CODE OF ORDINANCES § 58-179. A violation of this ordinance constitutes a misdemeanor. *See* VAN BUREN, MICH., CODE OF ORDINANCES § 1-13(a) ("Unless another penalty is expressly provided by this Code for any particular provision . . . every person convicted of a violation of any provision of this Code . . . shall be punished by a fine of not more than $500.00 and costs of prosecution, or by imprisonment for a term not exceeding 90 days, or by both[.]").

from a breach of peace misdemeanor to a more serious police interference felony.[5] Thus, even Plaintiff's account of the facts points to a serious, albeit non-violent, crime.

Conversely, the two remaining *Graham* factors weigh heavily in Plaintiff's favor: "whether the suspect poses an immediate threat to the safety of the officers or others," and "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. First, Plaintiff was unarmed. In his version of the facts, Plaintiff neither threatened nor attacked either officer. Instead, Plaintiff maintains that he followed the Officers' orders, stopping on command when ordered to do so and heading toward the house only because Officer Griggs asked him to retrieve his ID. As per Plaintiff's account, one of the Officers then grabbed him in a wrestling hold and, after a brief verbal exchange, Officer Griggs punched him in the forehead and knocked him to the ground.[6] Notably, Plaintiff claims Officer Griggs attacked him while he

---

[5] The Van Buren Township police obstruction ordinance provides as follows:

(a)   It shall be unlawful to interfere with or hinder any police officer, any member of the police department, or any person duly empowered with police authority while in the discharge or apparent discharge of his duty.
(b)   It shall be unlawful to resist any police officer or other law enforcement agent while in the discharge or apparent discharge of his duty.

VAN BUREN, MICH., CODE OF ORDINANCES § 58-31. Although the parallel offense defined under state law is a felony, Mich. Comp. Laws § 750.479, the ordinance violation is treated as a misdemeanor. *See* VAN BUREN, MICH., CODE OF ORDINANCES § 1-13(a); § 58-31.

[6] Plaintiff also claims that Officer Griggs used excessive force when he allegedly pushed Plaintiff toward the holding cell during an encounter at the police station, but Defendants contend Plaintiff and Officer Griggs did not interact at all while at the station. On March 20, 2013, Defendants moved to supplement the evidentiary record with audio/video documentation of Plaintiff's after-arrest behavior during his booking at the police station. In their motion, Defendants argued that these recordings would irrefutably contradict Plaintiff's claim that Officer Griggs pushed him while at the station.

was immobilized, and thus did not represent "an immediate threat to the safety of the officers or others." Second, the facts in a light most favorable to Plaintiff show that he was not "actively resisting arrest," unless calling Officer Griggs a "Bozo" amounts to such resistance. Moreover, the record contains no evidence that Plaintiff was "attempting to evade arrest by flight."

To be sure, the Court must assess the reasonableness of the Officers' conduct in light of the "split-second judgments" demanded under the circumstances. It is undisputed that the Officers had responded to a complaint of noise emanating from Plaintiff's residence, that the Plaintiff resisted the Officers' command that the music be turned down or off, and that at some point Plaintiff tried to head back inside the house and was told to stop. Under the circumstances, it would have been reasonable for a police officer to employ some degree of force to stop Plaintiff from reentering his residence. Even so, the law requires that the amount of force employed must be reasonably tailored to the situation. *See, e.g.*, *Burchett*, 310 F.3d at 945-46; *McDowell v. Rogers*, 863 F.2d 1302, 1306-07 (6th Cir. 1988). Thus, while it might well have been appropriate for Officer Griggs to use a "straight arm bar" technique to immobilize Plaintiff and bring him to the ground, the present procedural posture requires the Court to credit Plaintiff's testimony that Officer Griggs actually punched him in the forehead. Viewing the record most favorably to Plaintiff, a trier of fact could conclude that this amount of force was an

---

The Court has denied Defendants' motion on procedural grounds. Nonetheless, even if the Court were to review the recordings of the events at the police station, these recordings would be insufficient to dispose of Plaintiff's entire excessive force claim, which is based primarily on the events that occurred outside of Plaintiff's residence.

11

excessive response to an individual who did not pose an immediate threat to the safety of the Officers or others, nor physically resisted arrest.[7]

Judging the alleged use of force "from the perspective of a reasonable officer on the scene," a reasonable jury could find that the degree of force used by the Officers to detain Plaintiff was not objectively reasonable, even in light of Plaintiff's purported breach of peace and police obstruction violations. *See McCaig v. Raber*, 12-1393, 2013 WL 628420 (6th Cir. Feb. 21, 2013) (unpublished opinion) (holding the use of a takedown maneuver not objectively reasonable, even though the plaintiff admittedly did not put his hand behind his back as requested by the defendant officer and "jerked away" when the officer screamed loudly in his

---

[7] Defendants contend that certain audio/video recordings, taken from the Officers' vehicles while parked in front of Plaintiff's residence, discredit Plaintiff's version of the facts. For example, Defendants argue the recordings provide irrefutable evidence that neither officer punched, kicked, or struck Plaintiff; that Plaintiff at no time lost consciousness, based on his continuous yelling; and that probable cause existed for Defendants to detain Plaintiff. [Defendants' Motion, pp. 4, 8,]. In response, Plaintiff contends that the recordings provide no video footage of the disputed events, and that the audio recordings are too lacking in quality to contradict Plaintiff's account. Further, Plaintiff claims that the recordings were "doctored" so as to omit portions of the interaction between Plaintiff and Defendants.

The parties' arguments draw primarily from *Scott v. Harris*, 550 U.S. 372 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Here, the video/audio recordings taken from Defendants' police cars do not "blatantly contradict[] the record" to the point that no reasonable jury would believe Plaintiff's factual account. *Id.* The video footage does not show the altercation between Plaintiff and the Officers, and the audio recordings are too unclear for the Court to disregard Plaintiff's factual account as a matter of law. While the audio recordings reflect a great deal of commotion, they do not disclose with any clarity who said what to whom, nor do they shed any light on the parties' factual dispute as to the type and sequence of force used by Plaintiff and the Officers. Accordingly, the recordings provide no basis for deviating from the traditional rule that the Court must view the record most favorably to Plaintiff as the nonmoving party. *See Coble v. City of White House*, 634 F.3d 865, 869-70 (6th Cir. 2011) (finding *Scott* distinguishable because the audio recording in that case did not blatantly contradict the plaintiff's testimony).

ear); *Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011) (holding the use of a leg sweep objectively unreasonable where "[a]side from telling the officers to 'get the f—— out of my house' and possibly balling up his fists as his hands hung by his sides, Pershell did not resist arrest or pose an immediate danger to officers at the time he was knocked to the ground"); *Lawler v. City of Taylor*, 268 F. App'x 384, 386–87 (6th Cir. 2008) (holding an officer's "use of force in throwing Lawler to the floor was disproportionate to any threat he faced from Lawler," given that Lawler merely insulted the officer and "raised his left arm slightly"). Accordingly, genuine issues of material fact remain as to whether the Officers' conduct violated Plaintiff's Fourth Amendment right to be free from excessive force.

**2.      Defendants Are Not Entitled to Qualified Immunity Because a Genuine Issue of Fact Remains as to the Reasonableness of Defendants' Use of Force Against Plaintiff.**

Defendants alternatively argue that they are entitled to qualified immunity with respect to Plaintiff's constitutional claim. Determining whether government officials are entitled to qualified immunity generally requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 549 (6th Cir. 2009). As discussed above, based on Plaintiff's version of the facts, a reasonable jury could conclude that the Officers' conduct toward Plaintiff violated his Fourth Amendment right to be free from excessive force. Nevertheless, the doctrine of qualified immunity allows for the possibility that an officer's on-the-spot judgment, though subsequently determined to be mistaken, might be deemed not to have violated a "clearly established" constitutional protection. *See Saucier v. Katz*, 533 U.S. 194, 205-08 (2001); *Burchett*, 310 F.3d at 942.

Defendants' effort to support this prong of the qualified immunity standard consists of a brief assertion, unsupported by citation to the record or any authority. Specifically, Defendants merely assert that, "in the context of taking into custody an apparently intoxicated, non-compliant offender . . . [the Court] will surely conclude that the law was not sufficiently settled so as to put a reasonable officer, in Officer Griggs' circumstances, on notice that his conduct was unconstitutional." [Defendant's Motion, p. 14]. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citations omitted); *see also Bishop v. Gosiger, Inc.*, 692 F. Supp.2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and citations omitted). Accordingly, the Court will deem Defendants' qualified immunity argument waived for the purposes of the present motion.

**C.     PLAINTIFF'S STATE-LAW CLAIMS**

**1.     Summary Judgment Is Not Proper on Plaintiff's Assault and Battery Claim Because Issues of Fact Remain as to the Reasonableness of Defendants' Use of Force.**

As discussed in footnote 3, *supra*, Michigan case law provides that a police officer is not liable for assault and battery if he "use[s] that force reasonable under the circumstances" to achieve a legitimate law enforcement purpose. *Delude*, 215 N.W.2d at 689; *see also Brewer v. Perrin*, 132 Mich. App. 520, 349 N.W.2d 198, 202 (1984) (explaining that although an officer may use reasonable force to effectuate an arrest, unjustifiable force may support a claim for assault and battery). Because an issue of fact exists as to whether the Officers here employed an

objectively reasonable degree of force to detain Plaintiff, summary judgment is also improper on Plaintiff's assault and battery claim.

Defendants' assertion of governmental immunity as to Plaintiff's assault and battery claim under Michigan's Governmental Tort Liability Act ("GTLA"), Mich. Comp. Laws § 691.1407, fails for a similar reason. The Michigan Supreme Court has summarized the test for individual governmental immunity in respect to an intentional tort claim as follows:

> If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity . . . by showing the following:
>
> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008). Again, viewing the record favorably to Plaintiff, a question of fact remains as to the reasonableness of Defendants' use of force, and thus as to whether Defendants were acting in good faith. *See*, *e.g.*, *Smith v. City of Sturgis*, 1:11-CV-390, 2012 WL 3010939 at *13(W.D. Mich. July 23, 2012) (unpublished opinion) (holding that, where the plaintiffs introduced evidence supporting their excessive force claim, a reasonable jury could conclude that the officers acted in bad faith, or with malice, based on a reckless disregard of the plaintiffs' rights). Because Defendants here cannot establish as a matter of law the second prong of their statutory immunity defense, they are not entitled to governmental immunity under the GTLA as to Plaintiff's assault and battery claim.

**2.      The Record Lacks Sufficient Evidence to Sustain Plaintiff's State-Law IIED Claim.**

Defendants next contend that Plaintiff's IIED claim fails as a matter of law. Although the Michigan Supreme Court has yet to recognize this theory of recovery, the Michigan Court of Appeals has stated that "[l]iability for the intentional infliction of emotional distress has been found . . . where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Graham v. Ford*, 237 Mich. App. 670, 604 N.W.2d 713, 716 (1999). But "[i]t is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Vredevelt v. GEO Grp., Inc.*, 145 Fed.Appx. 122, 135 (6th Cir. 2005).

Viewing the record in a light most favorable to Plaintiff, the Court cannot say that Defendants' conduct was so utterly reprehensible and intolerable as to sustain a recovery under this theory. Rather, the evidence indicates that Defendants were, at worst, overzealous in their investigation of possible ordinance violations and overly aggressive in responding to Plaintiff's efforts to resists the Officers' commands. Certainly, there is no evidence of premeditation or purposeful, malicious infliction of injury; rather, Plaintiff's testimony is reflective of a limited, single use of force in the heat of a skirmish between an officer and a non-compliant citizen. Consequently, the Court awards summary judgment in Defendants' favor on this claim.[8]

---

[8] Because Plaintiff's IIED claim fails as a matter of law, there is no need to address Defendants' assertion of governmental immunity as to this claim.

3.     **Plaintiff's State Law Claims for False Imprisonment, False Arrest, and Malicious Prosecution Fail as a Matter of Law.**

Defendants also attack the viability of Plaintiff's remaining state-law claims for false imprisonment, false arrest, and malicious prosecution. Specifically, Defendants contend that these claims must fail because probable cause existed as a matter of law for Defendants to detain and subsequently prosecute Plaintiff. The Court agrees.

False imprisonment is an "unlawful restraint of an individual's personal liberty." *Moore v. City of Detroit*, 252 Mich. App. 384, 652 N.W.2d 688, 690 (2002). Under Michigan law, the elements of false imprisonment are as follows: (1) "an act committed with the intention of confining another," (2) "the act directly or indirectly results in such confinement," and (3) "the person confined is conscious of his confinement." *Adams v. Natl' Bank of Detroit*, 444 Mich. 329, 508 N.W.2d 464, 468 (1993). Further, under Michigan law, "[t]he general concept of false imprisonment . . . is broader than, but includes, a false arrest involving law enforcement." *Moore*, 652 N.W.2d at 690.

False arrest, in turn, is "an illegal or unjustified arrest." *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 327 N.W.2d 893, 894 (1982). Notably, the underlying guilt or innocence of the person arrested is irrelevant. *Id.* at n. 1. Rather, the factfinder must evaluate the arrest from the point of view of the persons who made the arrest, and determine whether they had the legal right or justification to act as they did. *Id.* at 894. If so, the arrest was not a false arrest. *Id.* Crucially, "[l]iability for false arrest and false imprisonment attaches *only when the claimant is arrested without probable cause.*" *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999) (emphasis added).

The question of probable cause is also vital to a malicious prosecution claim. To prevail in that cause of action, a plaintiff must establish "(1) that the defendant has initiated a criminal

prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution *lacked probable cause for his actions*, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 572 N.W.2d 603, 609-10 (1998) (emphasis added). Therefore, if Defendants here had probable cause to detain Plaintiff, Plaintiff's remaining state-law claims necessarily fail.

The Supreme Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Moreover, "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Id.* at 36.

Viewing the record in a light most favorable to Plaintiff, the Court finds that Defendants, at the time of the incidents giving rise to this case, had probable cause to arrest, detain, and prosecute Plaintiff for one or more state law violations. It is undisputed that Defendants arrived at Plaintiff's residence in response to a noise complaint, and that Plaintiff was listening to music in his partially open garage around 11:25 p.m. For the purposes of this motion, it is also undisputed that Plaintiff refused Defendants' request to turn off his radio, and that Plaintiff told Defendants he would turn it back on once Defendants left. [Plaintiff's Response, p. 7]. Based on these uncontested facts, Defendants could have reasonably concluded that Plaintiff was

committing not only a breach of peace misdemeanor, but also a more serious police obstruction felony. *See* Mich. Comp. Laws § 750.479. Accordingly, Defendants had probable cause to arrest Plaintiff even if Plaintiff never pushed Officer Griggs as Defendants allege. *See* Mich. Comp. Laws § 764.15 ("(1) A peace officer, without a warrant, may arrest a person in any of the following situations: (a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.").

Moreover, the actual charges brought against Plaintiff in the state prosecution are irrelevant to the existence of probable cause. "[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. All that matters is that the Officers in this case had probable cause to arrest, detain, and prosecute Plaintiff for, at least, interfering with the police and disturbing the peace.[9] Because Plaintiff's state-law claims for false imprisonment, false arrest, and malicious

---

[9] Plaintiff's arguments that Defendants lacked probable cause fail as a matter of law. For purposes of the present motion, Plaintiff does not contest that probable cause or reasonable suspicion existed for Defendants' presence at Plaintiff's garage, based on the noise complaint. [Supp. to Plaintiff's Response, p. 2]. Plaintiff does, however, challenge the existence of probable cause for his arrest, claiming that a "fair-minded person of average intelligence and judgment would *not have been justified*, based on the then-existing facts available to Defendant[s], in believing that Plaintiff was guilty of crimes he was charged with." [Plaintiff's Response, p. 18]. But Plaintiff is incorrect that Defendants could not detain him without probable cause for each of the specific crimes he was later charged with. *Devenpeck*, 543 U.S. at 153.

Plaintiff's only other related argument is based on the allegation that he did not receive notice of the charges until after he had already filed a citizen's complaint against the Officers. Plaintiff claims "the timing of the charges is suspicious," but does not otherwise provide any authority to support this theory. Plaintiff also fails to explain how the timing of the charges affects the existence of probable cause in this case. Because "[i]t is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones," Plaintiff's arguments against the existence of probable cause fail as a matter of law. *Bishop*, 692 F. Supp.2d at 774 (internal quotation marks and citations omitted).

prosecution fail as a matter of law, the Court will grant summary judgment in favor of Defendants in respect to these claims.[10]

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' July 2, 2012 Motion for Summary Judgment (docket #9) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED to the extent that it challenges Plaintiff's state-law claims of intentional infliction of emotional distress, false imprisonment, false arrest, and malicious prosecution (Counts III, IV, V, and VI). However, Defendants' Motion is DENIED with respect to Plaintiff's federal §1983 claim of excessive force (Count I) and state-law claim of assault and battery (Count II). The case will proceed to trial only on these claims.

SO ORDERED.

                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: March 28, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 28, 2013, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager, (313) 234-5135

---

[10] Because the Court grants summary judgment as to these claims based on the existence of probable cause, there is no need to address Defendants' governmental immunity defense based on the GTLA.